# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **PATRICIA W.,**[1] | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )   Civil Action No. 7:18-cv-2 |
| | ) |
| **NANCY A. BERRYHILL,** | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION

Plaintiff Patricia W. ("Patricia"), proceeding pro se, filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Patricia alleges that the Administrative Law Judge ("ALJ") erred by finding that she was not disabled.[2] I conclude that substantial evidence supports the Commissioner's decision. Accordingly, I **RECOMMEND GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 14).

## STANDARD OF REVIEW

This Court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Patricia failed to demonstrate that she was disabled under the Act.[3] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such

---

[1] Due to privacy concerns, I am adopting the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that courts use only the first name and last initial of the claimant in social security opinions.

[2] While Patricia requested oral argument, I find that a hearing will not aid in the decisional process in this case and is thus unnecessary.

[3] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any

relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## **CLAIM HISTORY**

Patricia filed for DIB on October 24, 2013, claiming disability due to back problems, chronic pain, acid reflux, depression, anxiety, anger disorder, and sleep apnea, with an alleged onset date of July 27, 2012.[4] R. 75–76. Patricia was 45 years old when she applied for DIB, making her 40 years old on her alleged onset date. R. 75. Patricia's date last insured was December 31, 2015; thus, she must show that her disability began on or before this date and existed for twelve continuous months to receive DIB. Id.; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). The state agency denied Patricia's applications at the initial and reconsideration levels of administrative review. R. 75–108. On July 21, 2016, ALJ Geraldine H. Page held a hearing to consider Patricia's claims for DIB. R. 31–54. Counsel represented Patricia at the hearing, which included testimony from vocational expert Mark Hileman. R. 31. On October 19, 2016, the ALJ entered her decision analyzing Patricia's claims

---

medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects her ability to perform daily activities or certain forms of work. Rather, a claimant must show that her impairments prevent her from engaging in all forms of substantial gainful employment given her age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[4] In her initial application, Patricia indicated her alleged onset date was April 15, 2010. R. 75. At the administrative hearing, she (through counsel) amended the date to July 27, 2012. R. 15, 35. Patricia had filed a prior claim for DIB and supplemental security income (SSI), for which the ALJ entered her unfavorable decision on July 26, 2012. R. 58–70. Thus, Patricia amended her alleged onset date to the day after the prior decision.

2

under the familiar five-step process[5] and denying her claim for DIB. R. 15–26.

The ALJ found that Patricia did not engage in substantial gainful activity from July 27, 2012, the alleged onset date, through December 31, 2015, her date last insured. R. 17. The ALJ determined that Patricia suffered from the severe impairments of degenerative disc disease of the cervical and lumbar spine, right elbow arthralgia, obstructive sleep apnea, depressive and anxiety disorders, cannabis use disorder, intermittent explosive disorder, asthma/chronic obstructive pulmonary disease, and carpal tunnel syndrome. R. 17–18. The ALJ determined that these impairments, either individually or in combination, did not meet or medically equal a listed impairment, specifically listings 1.02 (major dysfunction of a joint (due to any cause)), 1.04 (disorders of the spine), 3.02 (chronic respiratory disorders), 3.03 (asthma), 3.09 (chronic pulmonary hypertension due to any cause), 11.14 (peripheral neuropathy), 12.04 (depressive, bipolar, and related disorders), and 12.06 (anxiety and obsessive-compulsive disorders). R. 18–20. The ALJ also considered the "paragraph B" criteria and determined that they were not satisfied. R. 19–20. The ALJ found that Patricia had mild restriction in activities of daily living, moderate difficulties in social functioning, moderate difficulties with regard to concentration, persistence, or pace, and no episodes of decompensation during the relevant period. Id. The ALJ determined that the "paragraph C" criteria were likewise not satisfied. R. 20.

The ALJ concluded that Patricia retained the residual functional capacity ("RFC") to

---

[5] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to her past relevant work; and if not, (5) whether she can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

perform sedentary work. Id. For exertional limitations, Patricia could lift and carry ten pounds frequently and twenty pounds occasionally; could sit for six hours, and stand or walk for two hours, in an eight-hour workday; but could not crawl, climb ladders, ropes, or scaffolds, or perform jobs done on vibrating surfaces or involving exposure to unprotected heights or hazardous machinery. Id. For postural limitations, Patricia was limited to occasional balancing, kneeling, stooping, crouching, and climbing ramps/stairs, but was capable of frequent fingering, feeling, handling, and reaching overhead. Id. Patricia could not perform jobs requiring driving and had to avoid even moderate exposure to pulmonary irritants or extremes of heat or humidity. R. 20–21. Patricia would be able to respond appropriately to supervision, coworkers, and usual work situations, and she would be able to understand, remember, and carry out simple instructions in repetitive, unskilled work. R. 21. Finally, Patricia would not be able to perform jobs that involved interaction with the general public or require more than occasional interaction with supervisors and coworkers. Id.

The ALJ determined that Patricia could not perform any past relevant work as an assistant manager of a convenience store, assistant manager of a billing collections unit, telephone customer service representative, or hotel clerk. R. 25. Based on her age, education, work experience, and RFC, the ALJ determined that Patricia could perform jobs that exist in significant numbers in the national economy, such as addressing clerk, stuffer, and printed circuit board touch-up screener. R. 25–26. Thus, the ALJ concluded that Patricia was not disabled. R. 26. Patricia appealed the ALJ's decision and the Appeals Council denied her request for review on October 30, 2017. R. 1–5.

## **ANALYSIS**

Patricia alleges that the ALJ wrongly determined that she was not disabled, while the

4

Commissioner argues that substantial evidence supports the ALJ's entire decision.

**A. Medical History**

1. Physical Impairments

In June 2012, Patricia had a surgical evaluation for her spine. An x-ray showed degeneration at C5-C6 and L5-S1. R. 277. Patricia was assessed with cervical and lumbar degenerative disc disease. Id. The neurosurgeon recommended pain management, injections, and physical therapy, but not surgery. R. 277–78. In November 2012, Patricia had a normal lumbosacral spine imaging study. R. 358–59. A May 2015 MRI showed minimal degenerative changes in her lumbar spine and maintained vertebral body heights. R. 557, 570–72. An April 2016 MRI of her back showed degenerative spondylolistheses at L4-L5. R. 553. Patricia maintained care at the Salem VA during the time period at issue, throughout which she regularly complained of lower back pain. R. 292, 298–300, 303. Patricia has not gotten any surgery. R. 39.

Patricia testified she left her last job as an assistant manager at a convenience store because she "couldn't work with this much pain anymore." R. 50. In her March 2014 pain questionnaire, Patricia reported having pain in both of her legs, knees, hands, wrists, elbows, and shoulders, along with her hip, cervical spine, and lumbar spine. R. 219. She says the pain is present all day, every day. Id. Pain medication (hydrocodone) and resting help, but the pain never goes away. R. 39, 46, 220. Patricia testified that she has a wheelchair that she began using in April 2016, although there is no indication in the record that a doctor prescribed it. R. 46.

Patricia testified that she also has a lot of pain in the wrist and thumb areas, causing her to not be able to hold things or write. R. 43. Studies showed she had ulnar nerve abnormalities in both elbows and carpal tunnel in both hands. R. 288. Patricia had an ulnar neurolysis of her right elbow with carpal tunnel release in her right hand in 2013. R. 287–88. Following the surgery,

Patricia reported having relief from almost all of her numbness and tingling along with improved sensation, and her motor function was intact. R. 287.

In October 2013, a sleep study showed that Patricia had positional sleep apnea. R. 356. The VA records contain regular sleep disturbance or apnea diagnoses during the relevant time period. R. 290–91, 294–98. Patricia testified that she uses a C-pap machine. R. 40. The records also contain multiple mentions of allergies (R. 292, 300–304) and asthma (R. 42, 290–301, 469). The VA records document numerous instances of Patricia missing pulmonary appointments or not complying with her treatment for her pulmonary issues. R. 329, 333, 340, 347–48, 353, 493.

Patricia testified to receiving a disability pension from the VA, as she alleges the VA found Patricia is 80% disabled and unable to work again. R. 43–44. The VA evaluations in the record show that the VA doctors did not consider Patricia to be permanently disabled. R. 481–84.

2. Mental Impairments

The doctors at the Salem VA routinely diagnosed Patricia with major depressive disorder of moderate degree during the time period at issue. R. 290–303, 435–38, 466–69, 485–86, 505. Patricia testified to being in psychotherapy at the VA (R. 40), but there are multiple mentions in the record of Patricia not showing up to her counseling appointments or not complying with her treatment. R. 317–18, 330–31, 334, 345, 354–55, 520–21, 527. In terms of functioning, Patricia stated in her function report that she is able to follow written and spoken instructions, and that she does okay with authority figures. R. 236–37. She does not handle stress or changes in routine well. R. 237. She also reported that she usually pays attention well. R. 236.

3. Medical Opinion Evidence

William Humphries, M.D., performed a consultative examination for the state agency in June 2014. Dr. Humphries diagnosed bilateral de Quervain's synovitis, bilateral carpal tunnel

6

syndrome status post right carpal tunnel release, right ulnar nerve entrapment status post ulnar nerve release, posttraumatic chronic cervicothoracic lumbar strain, polyarthropathy including knees and shoulders with possible degenerative joint disease, and mild chronic obstructive pulmonary disease. R. 454. Dr. Humphries reported that Patricia stated her neck and back were injured after a heavy wave knocked her over in 1993. R. 452. She had not undergone any surgery to her neck or back but did receive multiple injections. Id. She had carpal tunnel and a right ulnar nerve release in 2013, which Patricia alleged caused increased pain and no significant functional improvement. Id. Patricia also told Dr. Humphries that she experienced pain in both hands and thumbs, both knees, and both shoulders. Id. On physical examination, her neck and back were tender to palpation. R. 453. Her knees were slightly tender, while her right elbow, wrist, thumb, and hand, and left wrist and thumb, were also tender. Id. Her gait was normal but mildly antalgic on the right, and Patricia did not require an assistive device to move. R. 454. Her strength was normal in both legs. Id. Dr. Humphries's mental status examination revealed that Patricia was oriented, with normal speech, thought, memory, and intelligence, no aphasia, and appropriate affect and grooming. Id. Based on his examination, Dr. Humphries concluded that Patricia would be limited to sitting for six hours and standing or walking for two hours in an eight-hour workday; could lift twenty pounds occasionally and ten pounds frequently; could occasionally climb, kneel, or crawl; and could stoop or crouch without limitation. R. 454–55. She should avoid heights, hazards, and fumes, and could not use frequent hand controls. R. 455.

Marvin A. Gardner, Jr., M.D., conducted a psychological consultative examination for the state agency in June 2014. At this exam, Patricia told Dr. Gardner that her "biggest problem is the physical stuff." R. 458. Dr. Gardner diagnosed mild cannabis use disorder, moderate depressive disorder due to chronic pain syndrome with major depressive episode, anxiety

disorder due to chronic pain syndrome with generalized anxiety occurring more days than not, and intermittent explosive disorder. R. 462. Patricia reported daily marijuana use for pain, but had stopped using it just prior to the exam because her disability attorney encouraged her to stop. R. 461. Dr. Gardner determined that Patricia's immediate recall was moderately impaired; her recent memory was normal and her long-term memory was mildly impaired; her general fund of information and computation skills were normal; her insight was good and judgment fair; and her abstract thinking was normal. R. 461–62. Dr. Gardner observed that Patricia was oriented, but reported her mood as mostly "sad" and irritable, with some other indications of depression and anxiety. R. 461. Dr. Gardner concluded that her pain appeared to be the reason for her depression and anxiety. Id. He also concluded that Patricia becomes very angry with only moderate provocation because of her sustained irritability secondary to chronic pain. Id.

    Dr. Gardner determined Patricia would have no impairment of concentration, persistence, or pace when attempting simple and repetitive work tasks. R. 462. Patricia could maintain regular attendance in the workplace. R. 463. She would not require any special supervision, and could complete a normal workday and workweek without interruption. Id. Her irritability would cause moderate social impairment and so she should not work with the general public. Id. Finally, Patricia would not be able to deal with the usual stresses encountered in competitive work without her anxiety and depression rapidly worsening. Id.

    In June 2014, as part of the state agency's initial disability determination, Bert Spetzler, M.D., reviewed the record and determined that Patricia's severe medically determinable impairments included spine disorders, carpal tunnel syndrome, asthma, disorders of muscle, ligament, and fascia, other disorders of the nervous system, and major joint dysfunction. R. 83. In assessing her RFC, Dr. Spetzler determined that Patricia would be able to lift or carry twenty

8

pounds occasionally and ten pounds frequently; stand or walk for two hours and sit for six hours in an eight-hour workday; and push or pull without limitation. R. 85. Patricia could never crawl or climb ladders/ropes/scaffolds, but could occasionally climb ramps/stairs, balance, stoop, kneel, and crouch. R. 86. Dr. Spetzler determined that Patricia's environmental limitations included avoiding concentrated exposure to extreme cold and heat, extreme wetness and humidity, hazards, and fumes, odors, dusts, gases, and poor ventilation. R. 86–87. He ultimately concluded that Patricia would be capable of sedentary work. R. 90.

As part of that same evaluation, Andrew Bockner, M.D., performed a psychiatric review technique in July 2014. Dr. Bockner determined that Patricia's severe impairments included anxiety disorders, affective disorders, and drugs/substance addiction disorders. R. 83. He determined that Patricia had mild restriction in activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no repeated episodes of decompensation. Id. For her mental RFC assessment, Dr. Bockner determined that Patricia had no understanding and memory limitations but would have sustained concentration and persistence limitations. R. 87. Patricia would be moderately limited in her abilities to carry out detailed instructions; maintain attention and concentration for extended periods; work in coordination with or in proximity to others without being distracted by them; and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. R. 87–88. Dr. Bockner explained Patricia "can maintain concentration, persistence and pace on tasks with 1-2 step instructions that require only occasional contact with supervisors and coworkers and rare contact with the general public." R. 88.

Dr. Bockner also found social interaction limitations, specifically that Patricia would be

9

markedly limited in her abilities to interact appropriately with the general public, and moderately limited in her abilities to accept instructions and respond appropriately to criticism from supervisors, and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. Id. Dr. Bockner noted that Patricia "can interact with her supervisor and coworkers on an occasional basis," and "[s]he should have rare contact with the general public due to labile mood and angry outbursts." Id.

Patricia requested reconsideration of the state agency's disability determination because her "pain ha[d] doubled" and surgery on her hand and elbow had resulted in her not being able to use her right hand. R. 94. Lewis Singer, M.D., reviewed the record in October 2014 and found the same severe medically determinable impairments as Dr. Spetzler. R. 99. For the physical RFC evaluation, Dr. Singer made the exact same findings as Dr. Spetzler and concluded that Patricia was capable of sedentary work with the relevant limitations. R. 102–03, 107.

In January and February 2015, Patricia underwent a mental health evaluation (unrelated to her disability claim) by Jeanne Brooks, Ph.D., after losing custody of her daughter. R. 580. Dr. Brooks stated Patricia was cooperative during the exam, with clear linear thought processes, and her emotional response was within normal range. R. 581. She observed that Patricia's mental healthcare providers diagnosed major depressive disorder, but no PTSD. R. 587. Dr. Brooks administered the MMPI-2 test, which analyzed Patricia's emotional functioning and pathology, and Dr. Brooks diagnosed Patricia with other specified personality disorder, and borderline and narcissistic personality disorder. R. 589–90, 593.

### B. RFC Determination

In her brief, Patricia argues that substantial evidence does not support the ALJ's decision, and lists a number of disagreements she has with certain of the ALJ's findings. Pl.'s Br. at 8,

10

Dkt. 13. Because Patricia is proceeding pro se, I will liberally construe her brief as a general challenge to the ALJ's determination of Patricia's RFC finding. See Erickson v. Pardus, 551 U.S. 89, 94 (2007). The Commissioner argues that substantial evidence supports the ALJ's decision.

An RFC is the most a claimant can still do despite her impairments. 20 C.F.R. § 404.1545(a); SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The Commissioner determines the RFC based on all of the relevant evidence in the claimant's record, and it must reflect the combined limiting effects of impairment supported by the medical evidence or the claimant's credible complaints. See Mascio v. Colvin, 780 F.3d 632, 638–40 (4th Cir. 2015). SSR 96-8p requires the ALJ to include a narrative discussion describing how the evidence supports her conclusions when developing the RFC. Specifically, the ALJ is instructed to cite specific medical facts and non-medical evidence supporting her conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8p, 1996 WL 374184, at *7; see also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that an ALJ needs to provide an explicit explanation linking medical evidence listed in the decision to his ultimate findings). In Mascio v. Colvin, the court agreed with the Second Circuit that "'[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" 780 F.3d 632, 636 (4th Cir. 2015) (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)).

Patricia lodges a variety of disagreements with the ALJ's decision, specifically mentioning the ALJ's evaluations of Patricia's hand issues and sleep apnea; assessment of

11

Patricia's credibility; discounting of Patricia's hip pain; and application of the treating physician rule. Pl.'s Br. at 9–14, Dkt. 13. However, I find that substantial evidence supports the ALJ's findings because the ALJ provided a comprehensive analysis in which she connected specific evidence to her conclusions. R. 21–24.

In terms of Patricia's physical impairments, the ALJ discussed Patricia's spine evaluation, carpal tunnel surgery, and Dr. Humphries's consultative examination findings. The ALJ recognized that the June 2012 x-ray showed degeneration in Patricia's spine. R. 21. The ALJ then explained that Dr. Humphries's findings indicated that, despite the degeneration, Patricia "has fairly good range of motion of the back, neck, and most joints with no evidence of any significant neurological deficits." R. 23. The ALJ also noted that Patricia had surgery for her carpal tunnel syndrome on her right arm, and follow-ups indicated Patricia had good motor function and improved sensation. R. 21, 23. The ALJ recognized Patricia's many pulmonary impairments documented in the VA records from May 2012 through December 2015. However, the ALJ also described how those same records showed that Patricia was not compliant with her treatment for those issues and stated that "there is no evidence that they have necessitated emergent intervention on more than an infrequent basis." R. 22–23.

The ALJ then explained that she accorded "great weight" to the "consistent and well-supported opinions" of Dr. Humphries and the state agency consultants. R. 23. The ALJ ultimately crafted a physical RFC to account for the limitations found during the disability evaluations, and limited Patricia to sedentary work, the lowest level possible. R. 22. In fact, the RFC determinations of the state agency consultants and the consultative examiner were all consistent with one another, and the ALJ, in determining that the record evidence supported those evaluations, adopted all of those findings. The ALJ correctly observed that the record did

not contain "a more restrictive medical assessment by a treating or examining physician" (R. 23) and was entitled to rely on this conclusion in crafting her physical RFC.

Regarding Patricia's mental impairments, the ALJ recognized that the VA records regularly documented depression. R. 22. The ALJ laid out Dr. Gardner's consultative findings and his ultimate conclusions, along with Dr. Brooks's evaluation (although not performed in connection with a disability determination). R. 22–23. In evaluating Patricia's mental impairments, the ALJ noted that Patricia stated to the psychological consultant that "[t]he biggest problem is the physical stuff." R. 22. Further, the ALJ explained that the "objective clinical findings recorded by the consultant psychologists are not particularly compelling and records from the [VA] indicate that the claimant did not want to commit to regular psychotherapy." R. 24. The VA records support the latter assertion, as they demonstrate repeated cancelled appointments and "no-shows" during the time period at issue. The ALJ accorded great weight to Dr. Gardner's well-supported opinion, especially "in the absence of a more restrictive medical assessment by a treating or examining physician or mental health professional." Id. The ALJ adopted Dr. Gardner's recommended mental limitations after explaining the weight given to his opinion and that the objective record evidence supported those findings. R. 23–24. Patricia contends that the consultative examinations were too far in the past relative to the ALJ's 2016 decision because her condition continued to deteriorate over time. Pl.'s Br. at 13, Dkt. 13. However, the period at issue is between July 2012 and December 2015, and the consultative examinations, performed in 2014, were thus highly relevant to that time.

Patricia alleges that the ALJ improperly evaluated her subjective allegations of impairment. It is for the ALJ to determine the facts of a particular case and to resolve inconsistencies between a claimant's alleged impairments and her ability to work. See Smith v.

13

Chater, 99 F.3d 635, 638 (4th Cir. 1996). Patricia's subjective allegations of her disabling pain, symptoms, and impairments are not conclusive on their own; rather, subjective complaints and statements of symptoms, like all other evidence of disability, are considered in the context of the record as a whole. 20 C.F.R. §§ 404.1529, 416.929 (2014). The ALJ must determine the consistency of the claimant's subjective allegations by evaluating the claimant's medical history, medical signs, laboratory findings, objective medical evidence of pain, and "any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it." Craig v. Chater, 76 F.3d 585, 595 (4th Cir. 1996) (citations omitted). If a claimant's statements are inconsistent with other evidence, the ALJ may find that the other evidence overall outweighs the claimant's statements. See SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016).

The ALJ explained that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." R. 23. For example, the ALJ observed that, in Dr. Humphries's exam, Patricia stated that her carpal tunnel surgery gave her "no improvement." R. 22. However, the ALJ recognized other objective evidence in the record showing that Patricia had substantial improvement. R. 23. The ALJ also pointed out Patricia's statement to Dr. Gardner that "[t]he biggest problem is the physical stuff." R. 22. Yet records show that Patricia was not compliant with her treatment for her physical pulmonary conditions. Id. Similarly, Patricia was also not compliant with her psychotherapy, which detracts from her allegations of the severity of her depression. R. 23–24. As discussed, the ALJ explained that there was objective evidence consistent with the medical opinions, and the ALJ was entitled

14

to accord them more weight than Patricia's statements when her statements were in conflict or not substantiated by the record.

Patricia also alleges that the ALJ improperly evaluated the evidence from her VA doctors. A treating physician's opinion, which is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," will receive controlling weight. 20 C.F.R. § 404.1527(c)(2); Brown v. Comm'r, 873 F.3d 251, 269 (4th Cir. 2017); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Only acceptable medical sources can be considered treating sources entitled to the benefits of the treating physician rule. See SSR 06–03p, 2006 WL 2329939 (Aug. 9, 2006). A treating source is one that has provided the claimant "with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship [with the claimant]." 20 C.F.R. § 404.1527(a)(2) (2017).

Patricia fails to point to any particular opinion from a treating VA doctor to support her argument, and none exist in the record. Patricia testified that the VA determined she was more than 80% impaired and could never work again, but particular findings are not in the record. While the VA determined during a pension eligibility evaluation that Patricia could not then secure a gainful occupation, it also determined that she was not permanently disabled. R. 483–84. Regardless, any evaluation performed by a VA doctor was not done to evaluate Patricia for Social Security DIB. It is the province of the ALJ to determine whether Patricia is eligible to receive DIB, and I cannot say that the ALJ erred in refusing to rely on that one evaluation.

Finally, in response to Patricia's specific arguments that the ALJ did not properly evaluate her hip and sleep apnea impairments, I cannot conclude that substantial evidence does not support these determinations. There is no objective medical evidence in the record to support

any severe impairment of Patricia's hip, apart from one complaint of hip pain, for which there was never an official diagnosis (R. 572). Additionally, the ALJ determined that Patricia's sleep apnea was a severe impairment, but Patricia uses a C-pap machine to address her condition and the ALJ explained how Patricia was frequently non-compliant with her pulmonary treatment.

Overall, the ALJ's decision here includes the narrative discussion required by SSR 96-8p, and contains sufficient information to allow meaningful review. The Court is "not left to guess about how the ALJ arrived at [her] conclusions" because the ALJ's findings include a sufficient summary and explanation of Patricia's medical records, hearing testimony, the opinion evidence, and the ALJ's conclusions. It is not for the Court to re-weigh the evidence, as Patricia asks the Court to do. Accordingly, I find that there is adequate evidence to support the ALJ's conclusions, and so substantial evidence supports the decision.[6]

## CONCLUSION

It is not the province of the Court to make a disability determination. The Court's role is limited to determining whether substantial evidence supports the Commissioner's decision, and in this case, substantial evidence supports the ALJ's opinion. For the foregoing reasons, I **RECOMMEND GRANTING** the Commissioners Motion for Summary Judgment and **DISMISSING** this case from the Court's docket.

The Clerk is directed to transmit the record in this case to Elizabeth K. Dillon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any

---

[6] Patricia submits additional medical evidence with her brief. However, the emergency room records (Pl.'s Br. at 16–18) are from May 2018 and contain a handwritten note from Patricia of an alleged diagnosis, while the Lewis Gale letter (Pl.'s Br. at 19) concerns Patricia's alleged hyperthyroidism, which is not at all mentioned in the record before the Court. I thus find that these records are not relevant to her DIB claim for July 2012 to December 2015.

adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive on the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including the waiver of the right to appeal.

Entered: February 25, 2019

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge